HARRY ABRAMSON, appellant,

*v.*

THOMAS M. DAVIS, respondent.

[Decided January 31st, 1927.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Ingersoll, who filed the following opinion:

"The complainant and defendant were at one time, and until about April 30th, 1923, engaged as partners in the real estate business in Atlantic City, New Jersey, under the name of Commercial Realty Company.

"In March, 1923, the defendant told the complainant that he knew of some property he thought to be a good investment, and suggested that he purchase it. The defendant also told the complainant that Frank Sooy, a counselor-at-law of this state, was the trustee for the property. The complainant testifies that he said to the defendant, 'Well, if you think it is a good deal, use your judgment and buy it for me,' and arranged for the defendant to go to his (complainant's) father-in-law, and secure a check for $5,000 as the first payment. This check was secured from Segal, the father-in-law, and I am convinced that Davis obtained it. It was deposited to the credit of the realty company. Davis, on or about April 2d, 1923, obtained an agreement from one Silbert, agreeing to convey to Sooy certain premises in Atlantic City, being

known as Nos. 2204 and 2211 Fairmount avenue, being eighty feet in front by one hundred and fifty feet in depth; said premises consisting of two apartment houses, the Alvin and Fairmount, and five houses in the rear of said property, for the sum of $40,000. This being the property referred to by Davis in his conversation with the complainant.

"On or about April 3d, 1923, the complainant entered into an agreement to purchase of said Sooy the Alvin and Fairmount Apartments for the sum of $40,000. At about the same time the remaining property (the five cottages in the rear) was sold to Harry Davis, a brother of the defendant, for the sum of $10,000, and settlement for same and deed was delivered upon the same day as the settlement between Sooy and Abramson.

"Sooy's connection with the matter was that on the 30th or 31st of March, while at his home, Davis called and discussed the question of the purchase of the property in question, and told him that he would have to pay $40,000 for the property, but that he could get some reduction on account of commission, and that he (Sooy) decided to buy the property, and gave Davis a check for $5,000 to apply on account of the purchase price, and the agreement from Silbert was obtained.

"Sooy testifies that Davis had no interest whatever in these properties except such commission as he would receive as a co-partner in the Commercial Realty Company, until a few days prior to the settlement with Silbert, when, ascertaining that he needed funds to complete the settlement, agreed that Davis should receive one-half of the profits realized from the sale as consideration for the use of his, Davis', name as endorser of a note to secure the money.

"I am entirely convinced that Sooy is entirely innocent in this matter. I am, however, convinced that Davis should account to Abramson for any profit that he, Davis, made in this transaction.

"I am unable to determine whether Davis anticipated what actually did occur. That is, an opportunity to secure part of the profits Sooy was to obtain, or whether he saw an

opportunity to make some money for Sooy, his friend. Nevertheless, he certainly knew that Abramson was expecting to, and led Abramson to believe he, Abramson, was to receive the entire property for which 'Sooy was acting as trustee,' and he, Davis, was the master and controlling hand in the entire transaction and all the details thereof.

"Under the facts, had Davis purchased the property in his own name, he would have become a constructive trustee for Abramson's benefit. *Harrop* v. *Cole, 85 N. J. Eq. 32.* He, assuredly, cannot by a subterfuge place it in the hands of an innocent third party, from whom he received a portion of the profit, and avoid his responsibility.

"A reference will be made to a master for an accounting of the profits which Davis received."

*Messrs. Cole & Cole,* for the appellant.

*Messrs. Bourgeois & Coulomb,* for the respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Ingersoll.

*For reversal*—None.